(48 South. 1002.)

No. 17,268.

MONROE GROCER CO., Limited, v. J. A. PERDUE & CO., Limited (SOUTHERN DEVELOPMENT CO., Garnishee).

(March 1, 1909.)

1. GARNISHMENT (§ 130*) — PROCEEDINGS TO ENFORCE—OFFSET BY GARNISHEE.

The damages claimed by him as an offset had not been liquidated. He could not plead an unliquidated claim in compensation of an amount which he owed to his creditor, whose claim was garnished.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 259; Dec. Dig. § 130.*]

2. GARNISHMENT (§ 146*)—REOPENING CASE—DISCRETION OF COURT.

The contract which the garnishee offered in evidence, after the testimony had been introduced on the motion to traverse the answers and after the argument, did not show that the claim for damages was liquidated. It was not timely offered.

[Ed. Note.—For other cases, see Garnishment, Dec. Dig. § 146.*]

3. TRIAL (§ 377*)—REOPENING CASE—DISCRETION OF COURT.

It was within the discretion of the trial court to reopen the case, or not, at the point at which application was made to reopen the case.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 377.*]

4. SET-OFF AND COUNTERCLAIM (§ 35*)—COMPENSATION—LIQUIDATED DEMANDS.

Compensation takes place between two debts equally liquidated and demandable.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 58–64; Dec. Dig. § 35.*]

5. GARNISHMENT (§ 130*) — PROCEEDINGS TO ENFORCE—OFFSET BY GARNISHEE.

There was no positive evidence that the garnishee would ever succeed in proving his claim.

[Ed. Note.—For other cases, see Garnishment, Dec. Dig. § 130.*]

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; James Pemberton Madison, Judge.

Action by the Monroe Grocer Company, Limited, against J. A. Perdue & Co., Limited, in which action the Southern Development Company was summoned as garnishee. Judgment for plaintiff, and the garnishee appeals. Affirmed.

Stubbs, Russell & Theus, for appellant. Newton & Newton, for appellee Monroe Grocer Co. William Butler Clark, curator ad hoc, for appellee J. A. Perdue & Co.

BREAUX, C. J. Plaintiffs are the creditors in the sum of $2,100 of the J. A. Perdue

& Co., Limited, contractors, who left the state a short time before suit was brought. They proceeded against their debtors by attachment.

As they were absent, a curator ad hoc was appointed to represent the latter.

Plaintiffs at the time obtained a writ of garnishment, and made the Southern Development Company a party garnishee to the suit, to which interrogatories were propounded.

The Southern Development Company, through its president, answered the interrogatories and denied indebtedness to J. A. Perdue & Co.; stated that Perdue & Co. had constructed part of the line of the railway of the Arkansas, Louisiana & Gulf Railway Company between Bastrop and Monroe; that this was done under a contract with the Southern Development Company; that the amount of the work performed by the Perdue Company was $54,795.83, of which the Southern Development Company had paid to Perdue & Co. a considerable amount, leaving due, however, the sum of $3,437.57; but that said Perdue & Co. are indebted to the Southern Development Company in an amount largely in excess of this last-mentioned sum. To quote literally from the answer:

"On account of claims against the said Southern Development Company for amount of damages (sustained by property holders along said line of railway) due by said company, which bear a lien and privilege on the property of the said Southern Development Company and said Arkansas, Louisiana & Gulf Railway Company for delay in completing the work, the faulty and negligent character thereof, and the unnecessary expense caused by the failure of the Perdue Company to fulfill the terms of its contract with the Southern Development Company, so that the Southern Development Company is not indebted to the Perdue Company in any amount."

It was noted that nothing was said in the reference originally about a reconventional demand. The issue here is compensation vel non. Although the debtors were not present, it is not evident that they were not residents of the parish in which the suit was brought.

Be that as it may, the issues under the pleadings and facts are limited to whether there was or was not compensation.

To state the idea in different words: The Southern Development Company, a constructing company, which was under obligations in accordance with a contract with the railroad company named, gave part of its work, as we take it, to be done by the Perdue Company. It is very apprehensive that at an early date the railroad representatives will call upon it, the garnishee, to pay for work that Perdue & Co. failed to properly and timely perform. The garnishee in general terms also claims damages in its own right.

The nature of the work and the amount of the damages are not stated.

The curator ad hoc, representing Perdue & Co., in his answer to plaintiff's petition in this suit, stated that he made inquiry and found that Perdue & Co., whom he represented, were at Pine Bluff, Ark. He wrote to them. To his letter the firm answered that the company had no defense to make.

The curator ad hoc produced the letter, and it was offered in evidence by plaintiff.

In this letter Perdue & Co. stated that they were indebted to the Monroe Grocer Company; intended to pay their indebtedness as soon as they could get a final settlement; that they did not wish to contest the suit, but were opposed to paying before obtaining a final settlement; and in that event, to quote from the letter:

"We want our funds prorated among the people we owe there, and then make arrangements to pay my balances."

The word "my" of the letter being evidently an error.

The plaintiff in the garnishment proceedings—that is, the Monroe Grocer Company—traversed the answer of the garnishees, except as the garnishees showed by their answers that the Southern Development Company is indebted to J. A. Perdue & Co. in the

sum of $3,437.57. They prayed that the development company be held indebted to Perdue & Co. in the sum last stated absolutely, without offset, and not subject to any counterclaim of the Southern Development Company.

The case being at issue, testimony was heard.

Plaintiffs proved their claim against Perdue & Co.

Argument was then heard, and the papers were taken by the court for consideration of the issues.

After the case had been closed the garnishee filed a motion asking that the case be reopened, in order to enable it to offer the contract entered into between the Perdue Company and the Southern Development Company, alleging that there was ambiguity in the answer which it desired to explain.

The trial judge declined to grant the application and overruled the motion.

## On the Merits.

Discussion and judgment:

The appellants' contention is, in the first place, that the testimony offered after the note of evidence had been closed and argument heard did not have the effect of contradicting the original answers of the garnishee, and that in consequence there was no good reason to refuse the garnishee's motion to reopen the case.

In the second place the appellants' contention is that the motion and the affidavit to reopen the case should have been allowed, as it was timely presented and subserved the ends of justice.

And, lastly, that, even if the asserted amendments were properly rejected by the court, the answers of the garnishee did not authorize the judgment rendered.

Taking up the first proposition for decision, the supplemental motion of the garnishee was not for the purpose of explaining or amplifying the defense made. The contract entered into between the Southern Development Company and Perdue & Co. did not contain an explanation which rendered it proper to admit it in evidence. It was, besides, not timely offered. This contract shows that the garnishee, the Southern Development Company, had agreed with Perdue & Co. for the work to be done, and contained all needful stipulations and specifications in that connection. This contract threw no light upon the subject. It had naught to do with the issues, by reason of the fact that in the answer to the interrogatories propounded the garnishee, the Southern Development Company, admitted that it was indebted in an amount as before stated. That admission could not be contradicted by a contract, or any other evidence, as the garnishee could not prove that it was not indebted in the amount stated.

Now, as relates to the damages claimed as an offset, it is the only issue presented. The contract did not prove that there were any damages due, or that the garnishee had any claim for damages under the contract. It does not appear that the court erred in not permitting the garnishee to reopen the case after it had been closed.

The second proposition is equally as untenable.

It is well settled that it is within the discretion of the trial court to finally decide whether to reopen or to decline to reopen a case after the argument has been closed and the case submitted for decision.

In the case of Rose v. Whaley, 14 La. Ann. 375, cited by the garnishee, the court rescinded the order, taking the interrogatory for confessed, and allowed the garnishee to answer. This was timely, and entirely within the discretion of the court.

In another case, also cited by the garnishee, Hennen v. Forget, 27 La. Ann. 381, before the day fixed for hearing on the rule taken by the

plaintiff on the garnishee to show cause why the answer should not be taken for confessed, the garnishee was permitted to answer and explain his answers.

This was allowed by the court, again in its discretion, before acting upon the issues presented.

We have seen that in the present case the application to amend the interrogatories and explain them was made after that case had been heard on the motion to traverse the answers and after argument and submission.

Has the garnishee in the pending case, at the time the motion was made to reopen, any claim as of right to reopen?

In Cross on Pleadings it is stated that the application to reopen lies within the discretion of the court to permit the amendment— citing Davis v. Oakford, 11 La. Ann. 379; Robeson v. Railroad Co., 13 La. 469.

This commentator further states that this court has held that the answers of the garnishee cannot be amended, citing Adams v. Dinkgrave, 26 La. Ann. 626, and Taylor v. McGee, 19 La. Ann. 374; but that later it had been again decided to the contrary, and this court had gone to the older decisions, citing Tapp v. Green, 22 La. Ann. 42, and Maduel v. Mousseau, 28 La. Ann. 691.

Leaving this conflict in jurisprudence to whatever extent it may exist, we will state that in our opinion, if it appears evident that an amendment should be allowed, it is a matter of discretion with the district court.

This brings us to the third and last proposition of the garnishee in the order before stated, which is that the answers (of this garnishee) in any event did not authorize the judgment rendered.

In deciding this point, we will in the first place state that there is no question but that the garnishee has a right to a set-off of a claim he has against his creditor to the exclusion of the plaintiff in the garnishment proceedings. The garnishee, as a creditor of his debtor, has in his hand a security of which he cannot be divested, if the indebtedness falls within that category of debts which can be pleaded in compensation.

We say, which can be pleaded in compensation, for, if it cannot be so pleaded, the garnishee then has no right to retain the claim of its creditor in satisfaction of its claim.

We have found no decision directly in point in our jurisprudence (although Hancock v. Bank, 32 La. Ann. 593, has some bearing). It stands to reason, however, as an original proposition, that the garnishee cannot be heard to urge any claim at all it may fancy should be allowed as a set-off. There must be a limit in matter of a set-off.

In our opinion that limit is found in article 2209 of the Civil Code, which provides that compensation takes place between two debts having equally for their object a sum of money or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.

If there should be at any time any departure from the strict letter of this article, it would never be to the extent of permitting a garnishee to offset a claim undefined as to amount and as to facts, as the one pleaded in this case by the garnishee to offset its indebtedness to the claim of its creditor, whose claim is garnished in its hands.

In the absence of directly pertinent authority, we again referred to the excellent work, Cross on Pleading, p. 335.

We have noticed before, in turning the pages of the work, that he is given to seeking the origin of words and their derivatives. Here he states that the word "garnishee" is derived from "garnishment," from "garnir"— "to warn," "to give notice to," the debtor not to pay his indebtedness, but to answer the writ served. He adds that these words find no place in French jurisprudence; that other words are used instead in France—that is, "saisie-arrêt."

While the word "garnishee," it seems, is borrowed from the French language, the proceedings in garnishment are derived (Mr. Cross) from the English jurisprudence.

For that reason we in the first place consulted the decisions in jurisdictions in which the common-law system prevails.

From them we glean that the garnishee has the same right in defense which he can plead in a direct action, if one were brought against him on a claim for which he has been garnished.

And, again, the garnishee in garnishment proceedings should plainly set forth the nature of his right.

Where a garnishee claims a set-off, or facts from which the court can determine, the amount must be clearly shown.

Neither needful facts, nor the amount, are stated in this case to give rise to a right which can be considered as sufficient for a set-off. The claim is not stated, the amount is not fixed, and it is not even certain that it is an existing amount.

The set-off must be clearly and specifically pleaded. See Eng. & Am. Ency. of Law, vol. 9, pp. 835, 836.

We take up for a moment the French jurisprudence upon the subject, as it throws some light upon it.

Compensation peut-elle se faire en cas de saisie-arrêt? Laurent, vol. 18, p. 443, § 429.

"Un créancier du créancier pratique une saisie-arrêt entre les mains du débiteur. Celui-ci peut-il opposer au saisissant ce que lui doit le débiteur saisi? Il faut distinguer. Si le tiers saisi était créancier avant la saisie-arrêt, la dette sera éteinte par la compensation qui s'opère de plein droit; celui entre les mains duquel la saisie a été pratiquée peut donc dire au saisissant qu'il a saisi-arrêté une créance qui n'existait plus, c'est-à-dire que la saisie est inexistante comme étant sans objet. On suppose· naturellement que la créance opposée en compensation réunissait toutes les conditions pour être compensable avant la saisie-arrêt; si elle n'est devenue liquide ou exigible qu'après la saisie-arrêt, on rentre dans une autre hypothèse, celle qui est prévue par l'article 1298: la compensation ne pourra plus se faire."

Article 1298 of the French Code corresponds to article 2215 of our Code.

From Dalloz we quote:

"Mais si la créance était antérieure à la saisie, et pourvu quelle réunit alors les conditions requises pour la compensation, cette dernière déjà accomplie ne souffrirait aucun obstacle de la saisie opérée postérieurement."

The garnishee should, to the end of protecting his right, timely plead all that is needful to sustain his claim for compensation. The bare suggestion of the possibility of litigation thereafter on account of an apprehended claim because of an act of negligence of his creditor will not suffice as a defense in garnishment proceedings. It must be reasonably certain that there is a valid claim.

For reasons assigned, the judgment is affirmed. The costs of appeal are due by defendant.