HARDY, Judge.
Plaintiff brought this suit under the applicable provisions of the Federal Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix, § 901 et seq., and the Housing and: Rent Act .of 1947, 50 U.S.C.A. Appendix, § 1881 et seq., for the recovery of liquidated damages to the extent of an alleged overcharge in the rent collected from plaintiff as tenant of defendant, owner of the rented property in question. After trial there was judgment 'for defendant,, from which plaintiff has appealed.
Practically all of the material facts, involved were established on trial without dispute. Defendant is the owner of premises located at municipal number 1145 Monfoe Street in the City of Alexandria. During the three-month period from April 15, 1948, to July 15, 1948, the premises were rented and occupied by plaintiff and for said period plaintiff paid defendant a rental of $60 per month. Plaintiff vacated the premises on July 15, 1948. Defendant had registered the described premises with the office of the Area Rent Control Director in Alexandria and the authorized and established rent for said premises had been fixed at $30 per month. After vacating the premises plaintiff consulted the Area Rent Director and made complaint of the overcharge. The official in question immediately notified defendant to come to his office for a discussion of the complaint. The record shows that defendant relied, in justification of the overcharge, upon the grounds that he “thought” rent controls were no longer in existence in the parish, and that he had made substantial capital improvements on the premises in. question. Despite defendant’s unfounded belief, it is established that rent controls were in effect in the City of Alexandria until the. area was decontrolled on April 27,. 1949. As a consequence it follows that there is no question as to the fact that defendant was guilty of overcharging plaintiff $30 per month during the three-month period of her tenancy. After discussion with the Area Director and at his sugges *61 tion, defendant wrote a check in favor of plaintiff in the sum of $30 and left it with the Director for delivery to plaintiff on the condition that she execute a waiver of her claims for damages resulting from the overcharges. This tender of settlement was refused by plaintiff upon the advice of counsel, and subsequently this suit was filed. After his conference with defendant following plaintiff’s complaint, the rent director by order issued July - 20, 1948, authorized the raising of the maximum rental of the premises involved from $30 to $50 per month, and the order was made retroactively effective as of July 16, 1948, which, however, was the day following the expiration of plaintiff’s tenancy of the premises.
On the basis of the related facts there can be no question as to the overcharge in the amount of $30 per month, aggregating a total of $90 for the three-month period. Plaintiff seeks the recovery of liquidated damages in the sum of $270, being triple the amount of the overcharge, together with the additional sum of $150 as attorney’s fees.
In written opinion expressing his reasons for judgment our learned brother of the District Court appears to have based his conclusion on the ground that plaintiff did not establish that the defendant was in bad faith or had been guilty of wilful violation. The District Judge further took the position that the plaintiff in reality had no cause of action because there was no showing that defendant had refused to comply with a refund order, and, on the contrary, that the defendant “readily complied with every order of the Director and for that reason there is no ground for a judgment herein”.
Careful examination leads us to a quite opposite conclusion both with regard to the facts and the law involved.
Section 205(e) of the Emergency Price Control Act of 1942 reads as follows: “If any person selling a commodity violates a regulation, order, or price schedule prescribing a 'miximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In any action under this subsection, the seller shall be liable for reasonable attorney’s fees and costs as determined by the court, plus whichever of the following sums is greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50 as the court in its discretion may determine: Provided however, That such amount shall be the amount of the overcharges if the defendant proves that the violation of the regulation, order,, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word ‘overcharge’ shall mean the amount by which the consideration exceeds the applicable maximum price. * * * ” 50 U.S.C.A Appendix, § 925, verbo Enforcement.
•Section 205 of the Housing and Rent Act of 1947, 61 Stat. 199, reads: “Any person who demands, accepts, or receives any. payment of rent in excess of the maximum rent prescribed under section 204 (section 1894 of this Appendix) shall be liable to the person from whom he demands-, accepts, or receives such payment, for reasonable attorney’s fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted, or received exceeded the maximum rent which could lawfully be demanded, accepted or received, whichever in either case may be the greater, amount; Provided, That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precaution* *62 against the occurrence of the violation. * * * ” 50 U.S.C.A.Appendix, § 1895.
In our opinion the District Judge erred in his conclusion that only a refusal to comply with the order of the Area Rent Director constitutes a cause of action. We find nothing in the law above set forth, nor in numerous decisions of our Federal Courts which would justify this conclusion. It appears very plain to our minds that' the cause of action is the violation, that is, the overcharge by a lessor. Under the facts in this case there can be not the slightest possible doubt as to the fact that the defendant overcharged plaintiff $30 per month for a period of three months. Nor is any order of the Area Rent Director here involved. He issued no order until after the termination of plaintiff’s tenancy of the premises and the order was retroactively effective only after such termination. Nor did the Area Rent Director issue any order with respect to a refund. The testimony of the Rent Director is positive and uncontroverted on the point that his intervention as between plaintiff and defendant was designed purely and simply to effect a settlement and that his actions to such end carried no possible connotation of an official capacity. Plaintiff was completely within her rights in refusing the proffered tender of settlement and it is to be noted that the offer quite obviously was based upon the difference in the new rent ceiling of $50 and the actual rental of $60 per month paid by plaintiff, which ceiling was authorized and became effective only after plaintiff had vacated the premises. We see no possible ground for any contention indicating that the overcharge was less than $30 per month.
We note the following statement in the opinion of the District Judge: “After an investigation the Director determined that he (defendant) was entitled to a rent of $50.00 per month during the three months plaintiff occupied the premises and that he had overcharged for each month the sum of $10.00 and suggested that defendant leave his check to cover the overcharge.”
The above findings of fact as stated by our learned brother do not accord with our interpretation. Because of the importance of a correct estimation of these factual points we quote at length the following testimony of Mr. Hardy E. Frank, the Area Rent Director:
“By Mr. Gravel:
“Counsel for plaintiff:
“Q. A while ago the judge in ruling on an objection made this statement, that you and Mr. Brasher had arrived at the amount of thirty dollars as the correct overcharge. Was your testimony to that effect? A. I don’t think it was. It was not meant to be to that effect.
“Q. Mr. Frank, I asked you this question : What was the exact amount of overcharge for each month that Mrs. Gibson occupied these premises? A. Thirty dollars per month.
“Q. Now will you explain to the court the question of this thirty dollars that Mr. Brasher has referred to and the tender of that thirty dollar'check to Mrs. Gibson— exactly how that works? A. Under the house and rent act of 1947 the administrator was set to administer and enforce the law. Our understanding was that we were to try to effect a settlement outside of court. We did not feel that it was necessary to go into court to get Mr. Brasher in compromise with an injunction. The only thing we could do, as far as our end of it, but we told him what his rent was— that was the maximum rent.
“Q. You also told him that was the maximum rent until changed by an order of your office? A. That is right.
“Q. The question of the thirty dollar check, was that in effect an offer of compromise between the parties?
“Objection: Leading
“By the Court: Objection Over-ruled.
“A. I had no right to make an offer of compromise. I was trying to get the two together in my idea what a correct refund would be.
“Q. How did the question of thirty dollars come up? A. I felt that the tenant had shared the benefits of the major capital improvements but I had no right to demand for the tenant. I suggested that *63 Mr. Brasher tender a check for thirty dollars payable to Mrs. Gibson and I would offer it to her.
“By the Court: Did you think that was unjust? A. No.
“Q. Mr. Frank, the tenant’s rights to refunds are not handled through your particular office, are they? A. No, sir.
“Q. Where are they handled? A. There is a change in the law compared to 1947.
“Q. What I mean by that is this: Do you have the right to collect for the tenant or compromise the tenant’s claim or take less for the tenant in settlement than is required by law? A. No, sir. I could not close the case by giving less than the amount of the overcharge.
“Q. When Mrs. Gibson refused to take less than the amount of the actual overcharge, what did you tell her? A. I told her she had her rights under the law.
“Q. Didn’t you tell her to go get a lawyer ? A. I told her she had her rights under the law and if she wanted to handle it under local law she would have to get her own attorney.
“Re-Cross Examination
“By Mr. Tomeny:
“Counsel for Defendant:
“Q. Mr. Frank, when you set up this amount of thirty dollars didn’t you feel that that was the total overcharge on that particular premises? A. No, sir, I couldn’t look at it that way.
“Q. Why did you arrive at thirty dollars? A. A suggested settlement.
“Q. Who suggested it ? A. I did.
“Q.- That was what you suggested to Mr. Brasher and Mr. Brasher immediately gave you his check for that amount? A. That is right.
“Q. He followed out all instructions you gave him, is that true? A. I think he did — one hundred per cent.”
It seems clear to us, after analysis of the testimony quoted, that the Director never at any time determined that defendant was entitled to collect a rental of $50 per month during the period of plaintiff’s occupancy. Nor did he intend to convey the idea that the actual overcharge as related to plaintiff was limited to $10 per month. As we appreciate the matter the Director’s suggestion that defendant leave a check for $30 to be delivered to plaintiff was simply an effort to settle the matter amicably and was not intended as an official determination of the overcharge and, as a consequence, of the rights of plaintiff.
We further note in the opinion of the District Judge that plaintiff failed to allege that defendant was in bad faith or had deliberately refused to comply with any directions or instructions of the Area Rent Director. We think this point is explicitly and unambiguously covered in the provisions of the Federal Statutes, quoted supra, in which it is expressly provided that the fact that the violation was neither wilful nor the result of failure to take practicable precautions are matters which must be proved by the defendant. In other words, this plea is an affirmative defense and we do not find any authority which requires the plaintiff to bear the burden of negating such a plea in the absence of its establishment by a defendant. Among other cases which sustain our conclusion that this plea is a matter of defense we particularly note Adams v. Backlund, D.C., 81 F.Sup. 643, holding that by the express terms of the statute a defendant must plead and prove such defense in order to limit recovery against him to the amount of overcharge; Bowles v. Hasting, 5 Cir., 146 F.2d 94, 95, specifically holding that “The burden is on the defendant to show both an absence of wilfulness, and the presence of care to prevent the occurrence of violations”; and Small v. Schultz, 7 Cir., 173 F.2d 940.
There is nothing in the record which would justify a conclusion that the defendant had not been wilful nor that he had taken proper precautions. As a matter of fact, even if this was required to be established by plaintiff, we think such a requirement would have been met under the evidence adduced in the instant case. For it is shown that the defendant some *64 several years prior to this occasion had been enjoined by judgment of the United States District Court for the Western District of Louisiana, Alexandria Division, from charging rents in excess of those established by existing regulations. It is pertinent to observe that the rent at the time of the issuance of the injunction was fixed at $30 per month for these, identical premises. In view of this fact defendant’s contention .that he' thought rental regulations were no longer in effect, particularly when he offered no support of the basis for such speculation, is particularly inappropriate and unacceptable.
We have cárefully considered the cases cited by the District Judge in support of his.opinion, Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, and Vowell v. Neer, D.C., 82 F.Sup. 936, 938. We do not perceive that the former case has any application to the facts' presented, here, since it involved an action by the Administrator seeking an injunction, and the court concerned itself entirely with a considera-' tion as to (1) discretion of a court in the granting vel non of an injunction; (2) the effect of cessation of violations as influencing the issuance of an injunction, and (3) the propriety and necessity for injunctive relief with reference to matters of public interest. The facts in the second case, cited supra, and the holdings in response thereto are different ¡in every particular from the facts in the instant case. It is quite true that the Court in its opinion made the following statement which was quoted by the District Court in his opinion: “Suit to recover an overcharge does not rest in debt, but is grounded upon violation. Had defendant refused to comply with the refund order within 30 days from its date, a cause of action in favor of plaintiff would have accrued for violation of the refund order.”
The Court continued in its opinion as follows: “This cause of action would have subsisted for a year. Since defendant made a bona fide effort to comply with the refund order and did not in any sense violate it, no cause of action for ‘violation’ arose in favor of plaintiff as to the refund.” (Emphasis by the Court.)
- We can only conclude that misconception of the facts, to which we have above called attention, was responsible for the acceptance of the qited case as precedent for judgment in this cause, and since we have found that there was no refund order and that no tender of a refund was made as such, and even that the tender made was far less than the amount of the overcharge, it is clear that the cited authority is inap- . plicable.
Nor can we accord consideration to defendant’s contention that he was entitled to an increase in rent because of the fact that he had effected major capital improvements. ¡Conceding that the improvements in question increased the rental value of the property, which is established by the action of the director in. raising the rent ceiling, this could not possibly have any bearing on plaintiff, during the entire period of whose tenancy the maximum rent was fixed at $30 per month. If plaintiff had made application before defendant’s tenancy instead of after, there could be no question as to the validity of such a defense. It is unnecessary to again point out, though we do -so by way of emphasis, that the application and the authorization were subsequent to the date plaintiff vacated the leased premises.
The only point that remains for consideration ’is the amount to which plaintiff is entitled. We call attention to the fact that under the Emergency Price Control Act of 1942, quoted supra, courts were vested with discretion as to the amount of the penalty. Under the provisions of the Housing and Rent Act of 1947, also quoted supra, no discretion whatsoever is reposed in a court, and the law flatly declares that a violator shall be liable, to the person from whom he received the over-payment, for reasonable attorney’s fees, costs and liquidated damages of three times the amount by which the payments exceeded the maximum rent which could have been lawfully demanded.
We think the sum of $100 as attorney’s fees would be a fair and reasonable award, together with liquidated damages in the total sum of $270 as required by law.
*65 For the reasons assigned the judgment appealed from is annulled, reversed and set aside and there is now judgment in favor of plaintiff, Juanita Durham Gibson, and against the defendant, Flash Preston Brasher, in the sum of $270, together with legal interest thereon from date of judicial demand until paid, together with an additional amount of $100 as attorney’s fees, and for all costs.